## Ayres Estate

384

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

The facts appear from the following adjudication of

LEFEVER, J., February 20, 1957.—Theresa T. Ayres died April 21, 1953, having first executed a professionally drawn will, dated December 13, 1945. Robert H. Morrow, Esq., the executor designated in the will, having predeceased testatrix, letters of administration c. t. a. were granted by the register of wills of Philadelphia County to William T. Morrow, Esq., on May 4, 1953.

By item second of her will testatrix provided:

"Because I have not reached definite conclusions or plans as to the ultimate distribution of my residuary Estate, I am making this Will solely as a temporary expedient. I have no immediate relatives or next of kin except possibly second or third cousins with whom I am not acquainted, only a few friends and none real intimate, and I am uncertain at this time as to my charitable intentions. Hence, for the present and until I formulate my intentions as to distribution of my Estate, I give and bequeath my residuary Estate unto my next of kin (be he, she, or they who they may) in accordance with the Intestate Laws of Pennsylvania, precisely as I had died intestate. My Executor hereinafter named shall use such reasonable means or

methods to accurately ascertain the beneficiary or beneficiaries as his judgment and experience may dictate. In default, however, of any one establishing his or her relationship to me to the satisfaction of my Executor and the satisfaction of the Orphans' Court of Philadelphia County within a period not longer than three years after my decease, then I give and bequeath my residuary Estate to such corporate charity or charities as my Executor shall nominate and appoint in writing so that my Estate shall under no circumstances escheat to the Commonwealth of Pennsylvania. As expressed before, this entire distribution of my residuary Estate is purely temporary until I get my thoughts and plans and make a new Will, or add a codicil thereto as I hope to do at an early date."

No codicil or new will was executed by testatrix.

The "First and Final Account of William T. Morrow, Administrator c. t. a." was filed on January 27, 1954, and came before the undersigned for audit on April 7, 1954. Adjudication thereon was filed on April 14, 1954, wherein "the balance shown by the account, principal, $34,258.25, consisting of cash, proceeds of sale of real estate, $6,002.78, and income, $624.31, together with any additional collections and interest, if any, on deposits to time of actual distribution, less the compromised claims of George B. Hunt in the sum of $100.00 and expenses of $5.00, and Emma Geller in the sum of $100.00 and expenses of $5.00, as aforesaid, and subject to the payment of such additional transfer inheritance tax as may be due the Commonwealth, is awarded to be retained by the accountant for a further accounting after April 21, 1956, being three years after decedent's death, in accordance with Item Second of the will of testatrix."

The "Second Account of William T. Morrow, Administrator c. t. a. as per adjudication of Lefever, J., dated April 14, 1954", was filed on October 1, 1956,

and was called for audit before the undersigned on November 15, 1956. Extensive testimony and many documents were presented at this audit as to the genealogy of testatrix' closest relatives. This evidence demonstrated conclusively that these relatives are testatrix' first cousins once removed. All parties concede this to be a fact. The auditing judge so rules.

The first cousins once removed claim that they are entitled to testatrix' net estate. The Commonwealth controverts this claim, and contends that it is entitled thereto. Charles F. Nahill, Esq., trustee ad litem for unascertained charities, appointed by the auditing judge subsequent to the audit, contends that these charities are entitled to the estate.

Counsel for all parties in interest have filed briefs in support of their respective positions, and the case is now ready for disposition. The auditing judge will consider seriatim the four difficult legal questions presented.

*1. Does the Intestate Act of 1917, as amended, or the Intestate Act of 1947 determine distribution of this estate?*

The Intestate Act of June 7, 1917, P. L. 429, provides that next of kin, no matter how remote, share the estate of decedent. Under this act first cousins once removed would take. In contrast, however, under the Intestate Act of April 24, 1947, P. L. 89, the limit is first cousins, and first cousins once removed do not take. There is no dispute as to these legal principles.

By specific provision, section 22, the Wills Act of April 24, 1947, P. L. 89, 20 PS §180, took effect on January 1, 1948, and applied "only to the wills of all persons dying on or after that day". Section 14 thereof, sets up the following rules for the construction of wills:

"In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

"(1) Wills. Construed as if Executed Immediately Before Death. Every will shall be construed, with reference to the testator's real and personal estate, to speak and take effect as if it had been executed immediately before the death of the testator...

"(4) Meaning of 'Heirs' and 'Next of Kin', etc.; Time of Ascertaining Class. A devise or bequest of real or personal estate, whether directly or in trust, to the testator's or another designated person's 'heirs' or 'next of kin', 'relatives', or 'family' or to 'the persons thereunto entitled under the intestate laws' or to persons described by words of similar import, shall mean those persons, including the spouse, who would take under the intestate laws if the testator or other designated person were to die intestate at the time when such class is to be ascertained, a resident of the Commonwealth, and owning the estate so devised or bequeathed... The time when such class is to be ascertained shall be the time when the devise or bequest is to take effect in enjoyment."

While section 14(4) of the Wills Act of 1947 is new to the statute books, the legal principle therein expressed that the will shall be interpreted as of the date of death has been the law for many years in this Commonwealth, having been in effect long before testatrix executed her will: Fidelity Company's Appeal, 108 Pa. 492; McFillin's Estate, 235 Pa. 175; Murphey's Estate, 276 Pa. 498; Wright's Estate, 284 Pa. 334; Stoler's Estate, 293 Pa. 433; Whiteside's Estate, 302 Pa. 452; Farmers Trust Company v. Wilson, 361 Pa. 43. The holdings in these cases are epitomized in Whiteside's Estate, supra, page 454:

"In a long line of decisions we have held that where a testator gives his estate to his heirs or next of kin or to those who may be entitled under the intestate laws, these classes are to be determined as of the date of his death, even though a life estate intervenes,—the only

exception to the rule being where the will contains an expression showing a clear and unequivocal intention to the contrary. . . ."

In the instant case, testatrix stated in her will, inter alia, that she had "no immediate relatives nor next of kin except *possibly* second or third cousins *with whom I am not acquainted,* only a few friends and none intimate, and I am uncertain at this time as to my charitable intentions". (Italics supplied). It is thus clear that testatrix had no feeling whatsoever for these distant cousins. She refused even to acknowledge their family relationship, referring to them only as "possibly" second or third cousins. She denies any intimacy or even friendship with them, characterizing them as individuals "with whom I am not acquainted". In fact, she classifies these stranger-cousins with her few friends, with whom she was not intimate. She then indicates indecision as to whom she will ultimately designate as her beneficiaries, but provides specifically her present requirement as to who shall take, viz.:

"Hence, for the present and until I formulate my intentions as to distribution of my Estate, I give and bequeath my residuary Estate unto my next of kin (be he, she, or they who they may be) in accordance with the Intestate Laws of Pennsylvania, precisely as I had died intestate".

Testatrix then exhibits grave doubt as to whether any one would qualify under the intestate law, directs the careful search for these "next of kin" and limits the time for finding them, and then concludes with a broad general "gift over" to charities, viz.:

"My Executor hereinafter named shall use such reasonable means or methods to accurately ascertain the beneficiary or beneficiaries as his judgment and experience may dictate. In default, however, of any one establishing his or her relationship to me to the satisfaction of my Executor and the satisfaction of the

Orphans' Court of Philadelphia County within a period not longer than three years after my decease, then I give and bequeath my residuary Estate to such corporate charity or charities as my Executor shall nominate and appoint in writing so that my Estate shall under no circumstances escheat to the Commonwealth of Pennsylvania."

The clear meaning of the plain words of the will is that testatrix had no specific intent to provide for her first cousins once removed. The language testatrix used is not in any sense an expression of intention that the statute in effect at the date of her death should *not* apply.

The auditing judge, therefore, finds that testatrix did not express an intent to be governed by the Intestate Act in effect at the time of executing the will. It follows that the Intestate Act of 1947 governs. Accordingly, the first cousins once removed do not come within the language of the will, viz., "my next of kin (be he, she, or they who they may be) in accordance with the Intestate Laws of Pennsylvania, precisely as I had died intestate". Therefore, they are not entitled to participate in testatrix' estate.

*2. Is the Commonwealth, under the phraseology of testatrix' will, entitled to testatrix' estate?*

The Intestate Act of 1947 introduces a new concept into the law. Under that act, if there are in existence no relatives of a specified degree of consanguinity, the Commonwealth is entitled to receive the balance or all of the estate *as an heir*: Davis Estate, 365 Pa. 605. Heretofore, in such a situation the Commonwealth was entitled to the estate *by escheat*. However, the draftsmen of the Intestate Act of 1947, as appears from their comments, intentionally designated the Commonwealth as an heir: Davis Estate, supra.

The law in effect when the scrivener prepared testatrix' will, and when testatrix executed it, was the

former law, namely, that the Commonwealth could participate in a decedent's estate *by escheat* only. Therefore, it is understandable that in expressing testatrix' intention that the Commonwealth under no circumstances should participate, the scrivener included the word "escheat". The crucial language used was: ". . . so that my Estate shall under no circumstances escheat to the Commonwealth of Pennsylvania".

It would seem that undue importance should not be attached to the word "escheat". Testatrix or her scrivener might have used the words "go to", "be received by", "paid to" or any similar expression. It is well established that testatrix' intention must be found within the four corners of her will. "In determining the meaning of the words used in a will, the court must be governed by the context, since, as has been previously pointed out, the ordinary meaning of the words will yield to the expression of a different testatorial intention. Thus, when the context of a will shows the testator to have used words in a certain sense, the court should follow this in preference to the "meaning given by lexicographers or in adjudged cases. In other words, the meaning given by the testator to the language used in his will should, generally speaking, control its construction, or, as one court graphically puts it, a will is a dictionary from which the meaning of the words used therein is to be ascertained. The true meaning of words used in a will is to be arrived at by considering them not only in their relation to the clause immediately in question, but to the whole will, and their significance will be expanded or restricted so as best to express the testatorial intention": 57 Am. Jur. 747-748.

As stated by Judge Goodrich of the United States Circuit Court of Appeals for the Third Circuit, in Thompson's Estate, 192 F. 2d 451, 453: ". . . escheat is not succession or assignment. It is the action of the

state stepping in and claiming property where the human beings who would otherwise own it have died or disappeared and where, if the state did not claim it, the lack of a lawful owner would be an invitation to self-service by first comers."

Construing testatrix' will as a whole, her clear and fixed intention was that her estate, in the absence of next of kin, should *not* go to the Commonwealth, but to charities. By providing for such charities she demonstrated further her unequivocal and fixed intention that the Commonwealth should not share in her estate either by escheat or as heir.

It follows that the rights, ordinarily possessed by the Commonwealth under the Intestate Act of 1947, to receive this estate since there were in existence no relatives within the class specified in the act, are defeated by the intention of testatrix, clearly expressed in her will, that the Commonwealth not take. Therefore, the auditing judge rules that the Commonwealth is not entitled to a distributive share of this estate either by escheat or as an heir.

*3. Does the power invested by testatrix in the executor to designate the corporate charity or charities die with the executor?*

The power to select the corporate charity or charities who should receive the balance of this estate, approximately $38,000, was an important one. Testatrix delegated her right to designate the charitable beneficiaries of her estate to Robert H. Morrow, Esq., her trusted lawyer and confidant. This was undoubtedly because, in the course of the preparation of her will, she had informed him of her wishes with respect to charities.

It is obvious that such a power is personal and can neither be delegated by the executor to another during his lifetime, nor passed on to a substituted fiduciary after the executor's death.

In Dormer's Estate, 46 D. & C. 687, (affirmed 348 Pa. 356), this court held that the power of appointment or disposal granted in a will indicated prima facie a personal confidence which was not annexed to the office, that such power did not survive the person to whom it was given, unless the will expressed such an intention specifically or by necessary implication. In that case, a power of disposal had been given to two executors, and the court held that upon the death of one, the other alone did not possess the power to exercise such discretion because it was joint. See also Dunn's Estate, 13 Phila. 395, 10 W. N. C. 313.

It follows that the power vested in the executor, Robert H. Morrow, Esq., to select the corporate charity beneficiaries was personal and died with him. The auditing judge so rules.

*4. Are the charitable intentions of testatrix preserved under the cy pres doctrine?*

Testatrix' intention as to the identity of the charity or charities is not known, yet she expressed a clear charitable intent, when she authorized her executor to choose the corporate charity or charities of his selection to receive her estate.

The cy pres doctrine is well established in the United States. It has been vigorously enforced in Pennsylvania. Briefly stated, the cy pres doctrine requires that no charitable gift, either inter vivos or testamentary, shall fail for want of a trustee or for want of exact designation of the beneficiary of the charitable gift.

The cy pres doctrine is part of the common law of Pennsylvania. It has been codified in section 10 of the Estates Act of April 24, 1947, P. L. 100, 107, 20 PS §301.10, viz:

"Administration of Charitable Estates. Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impractical of

fulfilment, or if it shall not have been carried out for want of a trustee or because of the failure of a trustee to designate such purpose, the court may, on application of the trustee or of any interested person or of the Attorney General of the Commonwealth, after proof of notice to the Attorney General of the Comonwealth when he is not the petitioner, order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor, whether his charitable intent be general or specific."

It is sufficient if testatrix's general intent is to devote her funds to charitable uses, even though she has failed to spell out the exact application of that intent: Barnwell's Estate, 269 Pa. 443; Thompson's Estate, 282 Pa. 30. See McKee's Estate, 378 Pa. 607. And the court will appoint a proper person to designate the charitable beneficiary or beneficiaries: Thompson's Estate, supra.

The charitable intention of testatrix in the instant case is clear. This court will not permit that charitable intention to fail.

The auditing judge is conscious of the fact that the problems presented in interpreting this will are difficult and that the conclusions here reached are not free from doubt. It is possible, therefore, that the conclusions reached by the auditing judge may be reversed by the orphans' court en banc or by the Supreme Court of Pennsylvania. It is unwise to do a futile thing. Therefore, it would seem inadvisable to set up the cy pres machinery to select the beneficiaries of testatrix' charitable intention until and unless this adjudication becomes final. Accordingly, the auditing judge will defer action in this regard. The accountant is directed to make application to the auditing judge to set up the necessary machinery for the selection of the corporate charity or charities who shall be the beneficiary or

beneficiaries of testatrix' charitable intention, if, as and when this adjudication becomes final.

All parties in interest are stated to have had notice of the audit . . .

And now, to wit, February 20, 1957, subject as aforesaid, the account is confirmed nisi.

*John A. M. McCarthy,* for accountant.

*Joseph Blank,* for exceptants.

*Charles F. Nahill,* guardian and trustee ad litem.

*Irvin Stander* and *Alfred D. Whitman,* for Commonwealth.

BOLGER, J., May 3, 1957.—Exceptions have been filed by the 20 first cousins once removed of testatrix to the adjudication dismissing their claims. The Commonwealth of Pennsylvania filed exceptions to other conclusions of the adjudication, but they were subsequently withdrawn.

The pole star guiding us in the construction of wills is the intention of testatrix derived from her express testamentary language: Lyman Estate, 366 Pa. 164. Another canon of construction is that in the ascertainment of this intention, we must examine the will from all four of its corners: Lifter Estate, 377 Pa. 227; 57 Am. Jur. 747-748, cited by the auditing judge. Basically the phraseology of a dispositive phrase does not alone comprehend all of the testamentary intent. We are not allowed, in other words, to take such a phrase out of context and give it effect to the exclusion of other pertinent parts of the will. Every word of every other part wherever found in the will, germane to the donative language, has its impact upon interpretation for dispositive purposes. An illustration is Crozer's Estate, 257 Pa. 241, where the question was whether gifts to three brothers and two sisters were class or personal gifts. The court decided they were personal after studying the whole will. See also Lifter's Estate, supra; Earle Estate, 369 Pa. 52. A third canon

is that no'part of a will shall be disregarded unless it is clearly surplusage: Carmany Estate, 357 Pa. 296.

The foregoing canons are merely aids to the construction of this will. They are not to be employed if the testatrix's intention is clear: Hunter's Orphans' Court Commonplace Book, vol. II, p. 1420, sec. 2 (a). This last fundamental is recognized in Whiteside's Estate, supra, and Farmers Trust Company v. Wilson, 361 Pa. 43, cited by the trustee ad litem, as well as in the very first line of the Wills Act of 1947, supra, cited by the auditing judge. In the two cited cases the exception to the rule determining the next of kin as of the date of death is when the will contains an expression showing a clear and unequivocal intention to the contrary. Likewise the first line of the Wills Act exempts from the operation of its rules of construction, wills with ". . . a contrary intent appearing therein . . .". Each will is its own best interpreter: Emmerich Estate, 347 Pa. 307.

Does this will clearly express a contrary intent? We are of opinion that it does, for two reasons, either one of which would be sufficient to sustain our conclusion. From the authorities we ascertain that there are two types of testamentary intent, (a) actual, and (b) legal, which are clearly distinguishable. This will involves both types of intention. The order of treatment of these two points is vitally important. *Legal* intent as will be seen hereinafter involves consideration of matters dehors the will and is, therefore, not the proper initial approach. We must, in accordance with time-honored rules, first examine the will itself without reference to externals and from its four corners determine the *actual* intent. To illustrate, if we were to approach our problem with the following events uppermost in our mind: The date of execution of the will in 1945, the enactment of the Intestate Act of 1947 and the subsequent death of testatrix, in 1953, without first deter-

mining *actual* intent, we would fall into error. Therefore, we will first discuss actual testamentary intent.

We do not lightly dismiss the solicitude expressed in the second sentence of the paragraph in question: "I have no immediate relatives or next of kin except possibly second or third cousins with whom I am not acquainted." This sentence has a direct bearing upon "next of kin under the Intestate Laws" and the later directions to the executor to seek them out and to have their relationship established to the satisfaction of the orphans' court. We cannot agree with the learned auditing judge's conclusion that this expression indicates that "testatrix exhibits grave doubt as to whether anyone would qualify under the Intestate Law". The question whether or not the second cousins could prove their relationships and how they should share per capita or per stirpes, she clearly leaves open for the orphans' court to determine.

Testatrix recognized that she had no first cousins living, although the facts show that she had at least two first cousins who had died prior to the date of the execution of the will. No doubt were they then alive, testatrix would have named them legatees. This description of her second and third cousins as her next of kin must, therefore, be read into the expressed dispositive language in the following language ". . . I give and bequeath my residuary estate unto my next of kin (be he, she or they who they may) in accordance with the Intestate Laws precisely as I had died intestate". The fact that testatrix did not know the offspring of these first cousins or that she was not intimate with them does not mean that she had no regard for them insofar as her dispositive intentions were concerned. Otherwise, she would have omitted all reference to them and would not have directed her executor to spend three years following her death to search for them. The language "(be he, she or they who they

may) ", the direction to the executor to search for three years and the responsibility of the executor and of the orphans' court to ascertain them could only have reference to such second or third cousins, otherwise these phrases are meaningless. Their language can apply to no other class of kin.

The gift over to charities selected by her executor is only: "In default, however, of anyone establishing his or her relationship to me. . . ." We, therefore, cannot disregard this language. Her reference to the Intestate Laws was merely for the purpose of proper identification of her second or third cousins and to indicate the shares or quantum they should take. Therefore, we construe testatrix's intention as though she had expressed herself as follows: "I am not sure that I have second or third cousins, but if there be any such discovered (be he, she or they who they may) during a three year search following my death, and their relationship be then established to the satisfaction of the Orphans' Court, then I give and bequeath my residuary estate to them per stirpes."

We now consider legal intent. In doing so we cannot limit our attention to the phrase "next of kin (be he, she or they who they may) in accordance with the Intestate Laws of Pennsylvania precisely as I had died intestate". We must interpret it in the light of the whole will.

One of the earliest cases applying the doctrine of legal intent is Martindale v. Warner, 15 Pa. 471, wherein it is stated that there is no obligation resting upon a testator to change his will every time the law changes. "Though a will, it is true, does not take effect until after the testator's death, yet it is inchoate, though not consummate, from the execution of it, and for many purposes in law, of which this is one, it relates to the time of the making of it."

We witness its application in Crozer's Estate, 257 Pa. 241, 245: "A testator's legal intention is to be gathered from the state of the law at the date of the will regardless of what it was at the date of his death: Martindale v. Warner, 15 Pa. 471; Hood v. Penna. Society to Protect Children from Cruelty, 221 Pa. 474; 26 American Annotated cases, 1913 A, page 1290." See also Lytle Estate, 160 Pa. Superior Ct. 247.

A clear exposition of legal intent is contained in 2 Page on Wills, §939: Where the testator has made his will and before he dies the law, which affects the construction or the effect and operation of the will, may be changed. In such cases in "determining the intention of the testator from the language of the will when read in the light of the surrounding circumstances and the like, it is generally said that the law which was in force when the will was executed is the law which determines the intention of the testator *unless the will shows that testator intends to be governed by the law of some point of time other than that of the execution of the will*". (Italics supplied.)

We observe that the learned auditing judge did not apply this quoted test. On the contrary, his conclusion was based upon the opposite premise, that the will contained no expression of intention that the statute in effect at the date of testatrix's death should not apply. This was in error. Since we can find no expression in the will that testatrix intended her dispositions to be governed by the law of some point of time other than that of the date of the execution of the will, the law then existing, the Intestate Act of 1917, and not the Intestate Act of 1947 which was applied by the learned auditing judge, is the law which must be followed. Claimants qualify under that law. While it is clear that testatrix intended to change her will, it is not clear that she wanted a later Intestate Act to affect it. Therefore, on both grounds we sustain the right of

claimants to inherit the residuary estate.

The exceptions are, therefore, sustained and the record remitted to the learned auditing judge to rule upon the relationships of claimants and thereupon to determine their respective rights to share in the distribution of the estate.

Lefever, J., dissents.